GORDON SILVER
MICHAEL V. CRISTALLI
Nevada Bar No. 6266
Email: mcristalli@gordonsilver.com
PAOLA M. ARMENI
Nevada Bar No. 8357
Email: parmeni@gordonsilver.com
EUNICE MORGAN BEATTIE
Nevada Bar No. 10382
Email: emorgan@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Tel: (702) 796-5555
Fax: (702) 369-2666
Attorneys for VANJUSH XHURKA

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>VANJUSH XHURKA,<br><br>　　　　　　　Defendant. | CASE NO. 2:12-CR-0078-KJD-GWF<br><br>**MOTION FOR RELEASE PENDING APPEAL**<br><br>**(Expedited Treatment Request)** |

COMES NOW, VANJUSH XHURKA ("Mr. Xhurka"), by and through his attorneys of record, MICHAEL V. CRISTALLI, ESQ., PAOLA M. ARMENI, ESQ., and EUNICE MORGAN BEATTIE, ESQ., of GORDON SILVER, and hereby moves that he be released pending appeal as to the incarceration portion of his sentence.

Mr. Xhurka's appeal is based on the district court's refusal to grant safety valve relief, despite the fact that the handgun and shotgun found in his home were not used in connection with the underlying offense.

This Motion is brought pursuant to 18 USC §3143(b), relevant case law, and all previous papers and pleadings filed in this matter.

....

....

....

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

1 of 16

Mr. Xhurka is presently out of custody on pretrial release but must surrender to the designated Federal Bureau of Prisons facility on June 21, 2013.

Dated this 3rd day of May, 2013.

GORDON SILVER

_____
MICHAEL V. CRISTALLI
Nevada Bar No. 6266
PAOLA M. ARMENI
Nevada Bar No. 8357
EUNICE MORGAN BEATTIE
Nevada Bar No. 10382
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
(702) 796-5555
Attorneys for VANJUSH XHURKA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

In the Criminal Indictment, the grand jury charges that "from a time unknown but not later than June 1, 2010, and continuing up to and including January 19, 2012. . . ." (*See* Criminal Indictment, attached as Exhibit A, p. 1), Mr. Xhurka engaged in illegal activity.

On September 4, 2012, Mr. Xhurka entered into a change of plea. The Court accepted the guilty plea. On March 27, 2013, Mr. Xhurka was sentenced. Mr. Xhurka's counsel requested that safety valve relief apply to the current mandatory/minimum penalty.

His counsel argued:

> The weapons located in the home were a Mossberg shotgun purchased. . . five years ago at a Big 5 Sporting Goods store. The Taurus handgun was, in fact, a birthday gift for my client's 20th birthday, which he immediately registered to himself, and that certificate of registration was provided to the Department of Probation.[1] It's included in the PSI report. And it's evidence that the gun was lawfully owned, along with the lawfully owned shotgun.
>
> Those weapons were located in the master bedroom.

(*See* Reporter's Transcript of Sentencing, dated March 2, 2013, attached as Exhibit B, hereinafter

---
[1] Mr. Xhurka was born in 1988.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

2 of 16

"T", at p. 5).

Mr. Saggese continued, citing from the Las Vegas Metropolitan Police Report, "Once the search was concluded on the closet, the search then moved to the master bedroom," and argued as follows:

> [This is] indicative of them being separate searches, much like a Jack and Jill bedroom: One bedroom would be searched. If the narcotics were there and the weapons were in the other bedroom, they would be considered separate rooms closed off by a door.
>
> There were no narcotics in the master bedroom. The weapon, the Mossberg shotgun, was behind the headboard of the bed. Now, your Honor, in looking at this from a position, just a human being, locating a shotgun behind a bed headboard where there are not narcotics is indicative of the fact that this was for home self-defense.
>
> It's 2:00 in the morning, it's 3:00 in the morning and you hear a noise. You want to have close access, to defend and protect yourself, to the weapon. It wasn't located near the grow house; it was located near the bed for that middle-of-the-night intruder access.

(T6).

The Court asked what was in the closet of the master bedroom and Mr. Saggese responded that he believed some plants and shake existed in the closet. (T7). The Court asked about access to the closet of the master bedroom and Mr. Saggese responded that the access to the master closet would come from the master bedroom. (T7). Mr. Saggese continued:

> The grow house and the grow operation, the conspiracy charge to manufacture marijuana, was based on the first floor. And that's where there was lighting and a vast majority of the first floor was utilized to grow. And I think that's where the three-and four-and five-foot plants were that were actually useable and there were no weapons in that location.

(T8).

Mr. Saggese differentiated Mr. Xhurka's situation to the case law cited by the Government, stating:

> To distinguish, your Honor, the Government had cited *Ferryman*. And in *Ferryman*, there were 11—quoting—11 firearms strategically placed throughout the house clearly in connection with the marijuana grow operation. They had a loaded shotgun next to the front door. They had loaded handguns near the grow operation, which is inconsistent with this case because my client's bedroom was on the second floor; his closet was in the bedroom on the second floor and the grow operation was on the first floor. These are— and so *Ferryman* had 11 firearms—and this is the Court's own language—strategically placed throughout the grow operation to protect it.
>
> Also, the Government cited to *Smith* in relation to the firearms. Now, *Smith* is even more clear. In *Smith*, the individual had a backpack on him and. . . in his backpack he had a loaded semiautomatic firearm, loaded, on him.
> And, when he approached his big field of marijuana—he had a substantial outdoor grow

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

operation—and he placed his backpack down. He was under surveillance. He's being watched. They were waiting for him to come. Whoever claimed the field was going to show up.

He showed armed with a gun loaded. And—and—and defense counsel appealed that and said even that, arguably, is not in connection with the grow operation. Smith's excuse was he liked to shoot snakes and they considered that to be implausible, that it's more likely that this individual had a loaded firearm in his backpack walking up to this field for the purposes of if there's someone messin' around with my field—field I'm gonna draw this loaded firearm, ready to go. It's accessible.

So the Court determined having a backpack on you with a weapon in it, whether or not you put the backpack down and take five steps to look in your grow house, not relevant. The Court determined that this was in fact in connection with the defense making this individual, Smith, ineligible for Safety Valve protection.

And that's the same thing—the same conclusion of the Court in *Ferryman*, that having 11 firearms strategically placed throughout the house was clearly in connection with the marijuana grow operation and—and made *Ferryman* ineligible for Safety Valve consideration.

(T8-10).

Mr. Saggese then argued the circumstances of his client, as follows:

My client, your Honor, is—is a relatively young man. And he was 23 at the time; he's 24 now, I believe. And the firearms are located in a position for home self-defense.

It's all—it also must be noted, your Honor, that his father was in law enforcement most of his life. And Mr. Xhurka says to me: "It was common. We always had a gun or two in the house, my father being involved in law enforcement." His entire career was in law enforcement. He said this was not uncommon and this was not odd and it was consistent with the way he was raised.

The .22-caliber weapon was in a closed case. Again, your Honor, not sitting on an end table. But many of these cases I've reviewed, they're loaded and they—they got a bullet in the chamber; the—the clip is loaded; and it's in the gun; and it is ready for action; it is ready to defend. It is clearly in—in connection with the drugs.

And I would respectfully argue to the Court that having a handgun in a closed, thick, black plastic case—I believe that the firearm was given to him on his birthday when he turned 20; it's the original case that the gun came in—is indicative of that. It's not ready for action, loaded, and it's not strategically placed in an area in which this—my client would need or utilize it to defend the grow house, which is kind the time that these cases have pretty consistently stated that to have a weapon on you, in your backpack, clearly it's in connection with the grow operation. Eleven firearms strategically placed throughout and in the grow operation, clearly you're defending your drugs. And I see that as and I'm hoping the Court sees this as inconsistent with defendant's conduct.

(T10-11).

....

....

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

4 of 16

Next, Mr. Saggese distinguished the final case cited by the Government as follows:

> The Government finally cites *Nelson*. And, in the *Nelson* case, your Honor, there were five guns loaded—five guns plus a substantially large volume of ammunition. And that those two—the number of guns, five; coupled with a large volume of ammunition—led the Court to believe that the need for those and the likelihood of that amount of—of ammunition for anything other than protection is just—it's just inconsistent and using a—almost a common sense approach.
>
> And they determined that Nelson's claims were not credible; they having this vast amount of ammunition was, you know, just—just because, kind of. Nelson was deemed to be ineligible for Safety Valve protection.

(T11).

Mr. Saggese argued that there was a preponderance of the evidence that Mr. Xhurka did not use weapons in connection with the underlying drug offense:

> Your Honor, my client has never been convicted of a felony. He has no history of any violence in his past. He is relatively young and has made a mistake obviously. Has admitted it; has pled guilty.
>
> What we're asking the Court to conclude in relation to the firearms is that by a preponderance of the evidence that the two firearms were not possessed in connection with the marijuana grow. And I think a common-sense approach, your Honor, would reveal that fact because of the points that I have mentioned.
>
> And, if the Court so graciously will accept that position as accurate, intending to have and bear some truth, then we can look to the provisions of 5C1 and we can loosen the Congressional mandate that has came down with the mandatory minimum sentence of 60 months. Essentially, Congress has taken away from the Court on particular charges and types the ability to have flexibility within this type of offense if—if a firearm was used, essentially, to perpetrate the crime or in connection with the crime.
>
> If my client is Safety Valve eligible, we would ask the Court to sentence him somewhere in the Guideline range consistent with the Guilty Plea Agreement. And you know what, your Honor, before I—and I won't get into that. I'll—I'll rest on the firearms position and will allow the Government—the Government to respond.

(T11-12).

The Government argued that there were also marijuana plants found in the master bedroom closet, as well as marijuana plant clones. (T13). The Government further argued that plant vitamins, and other items to help the plants grow, were found in the master bathroom. (T14).

After listening to counsel's arguments, and asking whether the handgun was a clip model (it was), the Court observed:

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

5 of 16

Looking at it from the practical standpoint of the fact that the defendant was living in the residence at the time, to the Court the logic of having a gun on the first floor where someone could break in would—would not be helpful to—to a defendant who now has someone between him and the gun. Having a gun on the second floor where—where he was sleeping and where one would expect that someone—the primary danger would be having someone come in during the night—and having ready access to that gun to be able to then go downstairs and—and repel the break-in is more logical.

I—I noted that the defendant was detained outside of the residence. If the—if the handgun was for personal protection and he had a permit for it, a registration, it would seem more logical to me that he would have been carrying that with him as he went about his business out on the street.

The Court notes that the shotgun was found right behind the headboard where the defendant slept. It would only make sense that this would be in close proximity to him in case someone broke into the lowest floor and he needed to go downstairs he would have immediate access to it as opposed to leaving it downstairs with the plants where he could easily be separated from his weapon.

I—I can't find by a preponderance of the evidence that the gun was not possessed in connection with the grow operation because of the fact that it was in close proximity to the drugs on the second floor in—in the walk-in closet and it was—it would be more useable upstairs than down where—where the plants were—were located. Accordingly, the Court declines to apply the Safety Valve exception.

(T14-16).

The Court asked Mr. Xhurka if he wanted to speak. Mr. Xhurka made a remorseful statement as to his conduct. Additionally, he reiterated his counsel's sentiments about the guns not being connected to the charges. : Specifically, Mr. Xhurka stated:

**And, as far as the weapons, I'd like to just comment and say that I've—I've had 'em before I did any of these decisions.**

(T18) (emphasis added).

Without Safety Valve relief, and under a Criminal History Category of I, Mr. Xhurka was sentenced to a mandatory minimum statutory term of 5 years. (T16).

The Court entered its findings on the record and Mr. Xhurka was advised of his right to file an appeal. (T22). The Court further stated that Mr. Xhurka was allowed to self-surrender by noon on June 21, 2013. (T23).

On April 8, 2013, Mr. Xhurka filed his notice of appeal.

....

....

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

## II.

## LEGAL ARGUMENT

18 USC § 3143(b)(1) provides for release pending appeal if "the judicial officer finds: (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and (B) that the appeal is not for purposes of delay and raises a substantial question of law or fact likely to result in ... reversal." 18 USC § 3143(b)(1). "If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with § 3142(b) or (c) of this title." 18 USC § 3143(b)(1).

### A. **Mr. Xhurka Can Present Clear and Convincing Evidence he is Unlikely to Flee or Pose a Danger to the Safety of Any Other Person or the Community if Released**

Mr. Xhurka can present clear and convincing evidence demonstrating he is neither a flight risk nor a danger to any person or the community if he is continued on release pending appeal. First, implicit in the Court's directive that he can be released until his self-surrender date is a finding that he is neither a flight risk nor a danger to any person or the community. 18 USC § 3143(a)(1) provides for detention pending sentencing unless "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any person or the community if released under section 3142(b) or (c)." 18 USC § 3143(a)(1). The Court's directive that he remain released until his self-surrender satisfies the first prong of the standard for release pending appeal.

Second, Mr. Xhurka has never been-nor will he ever be-a danger to any person or the community if he is continued on release pending appeal. As set forth in Mr. Xhurka's Sentencing Memorandum, Mr. Xhurka is a twenty-four year old man who has been described as a kind, loving, and selfless individual. (*See* Sentencing Memorandum, p. 2, attached as Exhibit C). He is intelligent and well-educated and attended Pima Medical Institute, obtaining certification as a dental assistant. (Exhibit C, p. 2). He is currently employed with Access Health Ventures Onsite Dental, utilizing his Dental Assistant Certification. (Exhibit C, p. 2). He has hopes of going back to school to become a licensed dentist. (Exhibit C, p. 3). According to

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

his office manager, he is a polite and well-mannered individual who has been a great addition to the team. (Exhibit C, p. 3).

Mr. Xhurka lives with his mother, father, grandmother, and brother. (Exhibit C, p.3). He poses no threat to society as he is a non-violent individual who has never been involved in, or convicted of, a violent crime. (Exhibit C, p. 3).

Third, Mr. Xhurka poses no risk of flight if he is continued on release pending appeal. He is already on release and has been ordered to self-surrender in June. (T23). He has lived in Las Vegas since he was eight years old. (Exhibit C, p. 3). He became a naturalized U.S. citizen in 2002. (Exhibit C, p. 3). Finally, Mr. Xhurka's record of court appearances in the criminal prosecution shows he is not a flight risk. *See* 18 USC § 3142(g)(3)(A).

### B. Mr. Xhurka's Appeal is not for the Purposes of Delay and Raises a Substantial Question of Law or Fact Likely to Result in Reversal

The leading case in the Ninth Circuit interpreting the provisions for bail or release pending appeal is contained in *United States v. Handy*, 761 F.2d 1279 (9th Cir. 1985). In *Handy*, because the Ninth Circuit concluded that the district court misconstrued the phrase, "substantial question likely to result in reversal or an order for a new trial," the Ninth Circuit reversed and remanded for imposition of appropriate conditions of release in accordance with 18 USC § 3142(c). *Id.* at 1280, 1284.

The Ninth Circuit announced that the word "substantial" defines the level of merit required in the question raised on appeal, while the phrase "likely to result in reversal or an order for a new trial" defines the type of question that must be presented. *Id.* at 1280-81.

The Ninth Circuit also examined the closely related issue of how much merit there must be to a question in order to find a "substantial question." *Id.* at 1281. It concluded that a "substantial question" is one that is "fairly debatable." *Id.* (internal citations omitted). It stated, "in short, a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous." *Id.* at 1283 (internal citations omitted).

The Ninth Circuit specifically quoted language from *D'Aquino v. United States*:

The question may be "substantial" even though the judge or justice hearing the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

8 of 16

application for bail would affirm on the merits of the appeal. The question may be new or novel. It may present unique facts not plainly covered by controlling precedents. It may involve important questions concerning the scope and meaning of decisions of the Supreme Court. The application of well-settled principles to the facts of the instant case may raise issues that are fairly debatable.

*Id.* at 1281, quoting *D'Aquino v. United States*, 180 F.2d 271, 272 (11th Cir. 1950).

The type of question that warrants release pending appeal is one that if the matter is "determined favorably to a defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *Handy*, 761 F.2d at 1283 (internal citations omitted).

As was set forth in his Sentencing Memorandum, Mr. Xhurka argued that he met the requirements set forth in U.S.S.G. §5C1.2(a), the "Safety Valve" exception. (Exhibit C, p. 8). Because the court determined that he did not meet the "Safety Valve" exception, he was sentenced to a mandatory/minimum sentence of 5 years rather than the anticipated guideline range of 12-18 months. It is this issue that Mr. Xhurka seeks to appeal.

1. Mr. Xhurka Meets the Requirements for the "Safety Valve" Exception

U.S.S.G. §5C1.2(a) states, in relevant part, that the court shall impose a sentence without regard to any statutory minimum sentence if the Court finds that the defendant meets the criteria in 18 U.S.C. §3553(f)(1-5), set forth below:

> (2) the defendant did not use violence or credible threats of violence **or possess a firearm or other dangerous weapon** (or induce another participant to do so) **in connection with the offense**.

U.S.S.G. §5C1.2(a) (2) (emphasis added).

As set forth in Mr. Xhurka's Sentencing Memorandum, according to the Las Vegas Metropolitan Police Department Officer's Report, a Taurus .22 caliber handgun was found inside of a case and on a dresser in the upstairs master bedroom. (Exhibit C, p. 11). A Mossberg shotgun was also found behind the headboard of the bed. (Exhibit C, p. 11). Ammunition for the handgun was found inside of the west dresser of the upstairs master bedroom. (Exhibit C, p. 11). **Narcotics were not found in this area.** (Exhibit C, p. 11)(emphasis added).

....

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

1  The firearms were not accessible; the Taurus handgun was stored inside of a closed case and the shotgun was stored behind a headboard. (Exhibit C, p. 11). The Taurus handgun was legally owned by Mr. Xhurka and was registered in 2008. (T5). Likewise, the shotgun was legally owned by Mr. Xhurka and purchased from Big 5 Sporting Goods in approximately 2008. (T5). The weapons were not located in close proximity to drugs. (Exhibit C, p. 11).

2. <u>The Court Erred in Determining that Mr. Xhurka Had Not Proven, by a Preponderance of the Evidence, that He Qualified for the "Safety Valve" Exception</u>

The district court's interpretation and application of the sentencing guidelines are reviewed *de novo*. *U. S. v. Blaize*, 959 F.2d 850, 851 (9th Cir. 1992). Factual findings made by the district court are reviewed for clear error. *Id.*

In *U.S. v. Ferryman*, 444 F.3d 1183 (9th Cir. 2006), a search of Ferryman's home turned up marijuana and eleven firearms. *U.S. v. Ferryman*, 444 F.3d 1183, 1185 (9th Cir. 2006). Ferryman argued that he qualified for safety valve relief. *Id.*

The Ninth Circuit, in determining whether the "firearm was in connection with the case," discussed the fact that six of the firearms were loaded and placed about the home in a configuration in the "classic defensive posture consistent with protection of a marijuana grow operation." *Id.* at 1186. The Ninth Circuit noted that the district court found implausible Ferryman's reasons for possessing the firearms. Specifically, Ferryman stated that he armed himself to protect his family after his son was beaten in a gang-related home invasion. However, he admitted that the marijuana growing operation likely led to subsequent burglaries of the home. As such, the district court conceded that although the marijuana operation probably enticed intruders, endangering his family, relief was not warranted because the court did not believe Ferryman would have been able to determine when he should use firearms in defense of his family, in a way separate from defense of the marijuana growing operation. *Id.*

The Ninth Circuit observed that denial of safety valve relief was appropriate based upon the circumstances in which the firearms were found, coupled with the implausibility of a defendant's explanations. *Id.* The Ninth Circuit cited to *U.S. v. Stewart*, a Sixth Circuit case, where the Sixth Circuit denied safety valve relief when a drug-trafficking defendant stated he

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

10 of 16

kept a loaded firearm under his mattress "only for sentimental reasons." *Id.*; *U.S. v. Stewart*, 306 F.3d 295, 327 n. 19 (6th Cir. 2002). The Ninth Circuit also cited to *U.S. v. Hallum*, a Tenth Circuit case, where safety valve relief was denied when the defendants kept a rifle in a truck used to transport marijuana and stated it was used to "protect against snakes." *Ferryman*, 444 F.3d at 1187; *U.S. v. Hallum*, 103 F.3d 87, 89 (10th Cir. 1996). Finally, the Ninth Circuit cited to *U.S. v. Payton*, a Tenth Circuit case, where safety valve relief was denied to a defendant who possessed five firearms in close proximity to substantial amounts of methamphetamine but argued that one of those firearms was a Valentine's Day gift for a co-defendant. *Ferryman*, 444 F.3d at 1187, *U.S. v. Payton*, 405 F.3d 1168, 1171 (10th Cir. 2005). Relying on those cases, the Ninth Circuit held that the district court's findings were not erroneous because of the **circumstances in which the guns were found coupled with the implausibility of Ferryman's explanations.** *Id.* (emphasis added). Mr. Xhurka's case is distinguishable from *Ferryman*.

Evidence that a defendant merely possessed a firearm at a drug trafficking crime scene, without proof that the weapon furthered an independent drug trafficking offense is insufficient to support a conviction under 18 USC § 1924(c).[2] *U.S. v. Krouse*, 370 F.3d 965 (9th Cir. 2004); *see U. S. v. Ceballos-Torres*, 217 F.3d 409 (5th Cir. 2000). In *Ceballos-Torres*, the Fifth Circuit explained that factors that would help determine whether a particular defendant's possession "furthered" a drug trafficking offense included: the type of drug activity being conducted; accessibility of the firearm; the type of weapon; whether the weapon was stolen; the status of possession (legal or illegal); whether the gun was loaded; proximity to drugs or drug profits; and the time and circumstances under which the gun was found. *U. S. v. Ceballos-Torres*, 217 F.3d 409, 414-15 (5th Cir. 2000). The Fifth Circuit continued that these type of factors helped distinguish different types of firearm possession. For example, a drug dealer whose firearms were unloaded antiques mounted on a wall would not possess firearms "in furtherance of" drug trafficking, nor would a drug trafficker who engaged in target shooting or hunting violate the law

---

[2] 18 USC § 1924(c) criminalizes possession of a firearm "in furtherance" of a drug trafficking or violent crime, which is analogous to the safety valve exception requirement that the firearm be "in connection" with the offense.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

by keeping a pistol for that purpose that was otherwise locked and inaccessible. *Id.* at 415.

In *Ceballos-Torres*, the Fifth Circuit determined that the defendant used the weapon "in furtherance" of a drug-trafficking offense because the weapon in question was loaded. Moreover, it was easily accessible in his apartment (lying in plain view on a bed) and the defendant confessed that his ownership of the weapon was acquired illegally. *Id.* Further, the weapon was possessed in the apartment along with a substantial amount of drugs and money. Together, these factors supported a finding that the gun protected drugs and money against robbery and was used in furtherance of drug trafficking. *Id.*

As set forth above, in the case at bar, a legally owned Taurus .22 caliber handgun was found inside of a case and on a dresser in the upstairs master bedroom. (Exhibit C, p. 11). A legally owned Mossberg shotgun was also found behind the headboard of the bed. (Exhibit C, p. 11). Ammunition for the handgun was found inside of the west dresser of the upstairs master bedroom. (Exhibit C, p. 11). Narcotics were not found in the master bedroom. (Exhibit C, p. 11).

At the sentencing proceedings, Mr. Saggese represented:

The weapons located in the home were a Mossberg shotgun purchased. . . five years ago at a Big 5 Sporting Goods store. The Taurus handgun was, in fact, a birthday gift for my client's 20th birthday, which he immediately registered to himself, and that certificate of registration was provided to the Department of Probation. It's included in the PSI report. And it's evidence that the gun was lawfully owned, along with the lawfully owned shotgun.

Those weapons were located in the master bedroom.

(T5).

Mr. Saggese continued:

And the firearms are located in a position for home self-defense.

It's all—it also must be noted, your Honor, that his father was in law enforcement most of his life. And Mr. Xhurka says to me: "It was common. We always had a gun or two in the house, my father being involved in law enforcement." His entire career was in law enforcement. He said this was not uncommon and this was not odd and it was consistent with the way he was raised. . . .

And I would respectfully argue to the Court that having a handgun in a closed, thick, black plastic case—I believe that the firearm was given to him on his birthday when he turned 20; it's the original case that the gun came in—is indicative of that. It's not ready for action, loaded, and it's not strategically placed in an area in which this—my client would need or utilize it to defend the grow house. . .

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

(T10-11).

Additionally, Mr. Xhurka stated:

> **And, as far as the weapons, I'd like to just comment and say that I've—I've had 'em before I did any of these decisions.**

(T18) (emphasis added).

**It must be emphasized that Mr. Xhurka previously owned the weapons prior to any illegal activity occurring.** Mr. Xhurka not only makes this representation before the Court but it is apparent, even from looking at the Criminal Indictment that he owned the weapons at issue prior to any illegal activity occurring. (Exhibit A). In the Criminal Indictment, the grand jury charges that "from a time unknown but not later than June 1, 2010, and continuing up to and including January 19, 2012. . . ." (Exhibit A, p. 1). However, Mr. Xhurka lawfully received the weapons in 2008, approximately two years prior to any illegal activity occurring.

As discussed in *Ferryman*, for a defendant to fail to qualify for safety valve relief, the defendant must fail to show, by a preponderance of the evidence, that possession of the firearm was not in connection with the offense. In contrast to *Ferryman*, Mr. Xhurka's handgun and shotgun were not found in a "classic defensive posture consistent with protection of a grow operation." Next, the reasons for why Mr. Xhurka would have a handgun and shotgun were not implausible. He previously (lawfully) owned the weapons at issue, years before any criminal activity occurring. His father was in law enforcement and he grew up with weapons in the house that were to be used in self-defense. Mr. Xhurka stated to his counsel that, "It was common. We always had a gun or two in the house, my father being involved in law enforcement." (T10). Mr. Xhurka's counsel further represented that "this was not uncommon" or "odd" and it was consistent with the way in which Mr. Xhurka was raised. (T10).

As discussed in *Ceballos-Torres* and *Krouse*, mere possession of a firearm without more, is not enough. The *Ceballos-Torres* court discussed factors demonstrating the "in furtherance" requirement that connects the weapon to a drug-trafficking offense. Utilizing those factors as a baseline, it is clear that Mr. Xhurka's weapon was not used "in connection" with the underlying offense. In Mr. Xhurka's case, the firearms were not easily accessible, they were not stolen, they

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

were legally owned, ammunition for the handgun was found in a different location, and narcotics were not in the master bedroom where the weapons were found.

According to the plea agreement, the parties stipulated to alternative calculations of Mr. Xhurka's offense level under the Sentencing Guidelines. (*See* Plea Agreement, attached as Exhibit D). Under one such alternative calculation, Mr. Xhurka's base offense level (18) with reductions for acceptance of responsibility (-2), timely plea (-1) and **safety valve reduction (-2)** would bring his adjusted offense level to 13. (Exhibit D) (emphasis added).

Under an adjusted offense level of 13, Mr. Xhurka would have qualified for a split sentence that could have included partial imprisonment and partial home confinement. With a sentencing range of 12-18 months, there was the ability for Mr. Xhurka to be released from imprisonment after six months. As such, had safety valve relief been obtained, Mr. Xhurka would have had a substantial reduction in the sentence he received, the term of imprisonment would have been minimal, opposed to the five years he is now facing.

Thus, Mr. Xhurka's appeal is based on the district court's refusal to grant safety valve relief, despite the fact that the handgun and shotgun found in Mr. Xhurka's home were not used in connection with the underlying offense. As discussed in 18 USC § 3143(b)(1), this appeal is not for purposes of delay and does raise a substantial question of law or fact likely to result in reversal.

....

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

14 of 16

## III.

## **CONCLUSION**

Based on the foregoing, release pending appeal is warranted because clear and convincing evidence exists to show that Mr. Xhurka is neither a flight risk nor a danger and that his appeal is not for purposes of delay but instead will raise a substantial question of law or fact likely to result in a reversal.

Dated this 3rd day of May, 2013.

GORDON SILVER

MICHAEL V. CRISTALLI
Nevada Bar No. 6266
PAOLA M. ARMENI
Nevada Bar No. 8357
EUNICE MORGAN BEATTIE
Nevada Bar No. 10382
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
(702) 796-5555
Attorneys for VANJUSH XHURKA

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

15 of 16

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of May, 2013, I electronically filed the foregoing document with the United States District Court, District of Nevada by using the CM/ECF filing system. I certify that the following parties or their counsel are registered as ECF filers and that they will be serviced by the CM/ECF system:

Bradley W. Giles: bradley.giles@usdoj.gov, Eileen.Alexander@usdoj.gov

Marc A Saggese: marc@maxlawnv.com, alexis@maxlawnv.com, lin@maxlawnv.com

Pamela A. Martin: Pam.Martin@usdoj.gov, Christie.M.Sequeira@usdoj.gov, Eileen.Alexander@usdoj.gov, Kelly.Muranaka@usdoj.gov

Sarah E Griswold sarah.griswold@usdoj.gov, ellenrose.jarmolowich@usdoj.gov, Melissa.Hubbard@usdoj.gov, william.foley@usdoj.gov

/s/ Myra Hyde
Myra Hyde, An employee of
GORDON SILVER

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104152-001/1922158

16 of 16